

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 SEP -6  PM 3: 42

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAGNY MAHAFFEY ET AL.

VERSUS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NO. 00-0050

SECTION "J" (2)

## FINDINGS AND RECOMMENDATION

Plaintiffs, Dagny Mahaffey and Shirlaine Mitchell, are minor children who seek judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA"). This case presents an unusual question: Who is the true Curtis C. Mahaffey, (a) plaintiffs' deceased father or (b) a mentally ill man who resides in Arizona? It is apparent that one of the two men was improperly claiming the identity of Curtis C. Mahaffey. However, the truth about who is the real Curtis C. Mahaffey cannot be ascertained definitively from this record. Nonetheless, the Commissioner was required to resolve the question in favor of one claimant over another based on the record

DATE OF ENTRY

SEP - 7 2000

DATE OF MAILING

**SEP - 7 2000**

Fee
Process
X Dktd
CtRmDep
Doc.No.

evidence and employing the applicable principles of law. This Court's function is even narrower, as explained below.

Effective June 1996, the Commissioner discontinued the survivors' insurance benefits that plaintiffs had been receiving, following the death of a man known in New Orleans as Curtis C. Mahaffey, who was the father and stepfather, respectively, of plaintiffs Mahaffey and Mitchell. The Commissioner discontinued plaintiffs' benefits because another man, living in Arizona and also known as Curtis C. Mahaffey, with the same date and place of birth, the same parents' names and using the same Social Security Number ("SSN") as the decedent, applied for and received Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). Plaintiffs appeal the Commissioner's finding that the Curtis C. Mahaffey in Arizona is the true owner of the SSN and that plaintiffs are therefore not entitled to survivors' benefits under that number.

As ordered by the Court, the parties filed memoranda of facts and law in support of their respective positions. Record Doc. Nos. 8, 9.

I.    PROCEDURAL HISTORY

On January 18, 1995, plaintiffs applied for survivors' benefits based on the account of wage earner Curtis C. Mahaffey, their father and stepfather, respectively, who died on

2

November 9, 1994 in New Orleans (the "decedent").  Plaintiffs were granted benefits through June 1996.  (Tr. 14).

The other Curtis C. Mahaffey (the "Arizona resident") applied for DIB and SSI in February 1996.  When the SSA learned that two persons were claiming the same SSN, its agencies investigated and determined that the Arizona resident was the owner of the SSN.  He was granted benefits effective as of December 1994 because of a severe mental impairment (schizophrenia) and plaintiffs' benefits under that SSN were terminated.  (Tr. 14).

Plaintiffs requested a hearing before an administrative law judge ("ALJ"), which was held on August 24, 1998.  The ALJ found that the identity of the decedent had not been established, except that he worked in New Orleans as an apartment manager from 1991 through 1994 and contributed to the wage earner's account under the SSN during that time.  (Tr. 14-17).  After the Appeals Council denied review (Tr. 4-5), the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiffs' request for judicial review raises the following issues:

A.    Whether the ALJ erred by relying on hearsay statements.

B.    Whether the ALJ erred by applying an incorrect standard of proof.

3

C.    Whether the ALJ failed to weigh the evidence and to provide a rationale for
his decision.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.    The totality of the evidence establishes that the Arizona resident is the
real Curtis Mahaffey and owner of the account in question.

2.    The identity of the decedent has not been established, except that he
contributed to the same account between 1991 and 1994.

3.    Considering the lack of identity and ownership of the account on
which the survivors' benefits claim has been made, the children of the
decedent are not eligible for benefits based on the Arizona resident's
account.

(Tr. 17). The ALJ also noted that the wages credited to the account between 1991 and

1994 were the property of the decedent and that survivors' benefits could be granted to

plaintiffs with the filing of a new claim on decedent's account, provided that his identity

and relationship to the children could be established. (Tr. 16).

IV.    ANALYSIS

A.    Standards of Review

The function of this Court on judicial review is limited to determining whether there

is substantial evidence in the record to support the final decision of the Commissioner as

trier of fact and whether the Commissioner applied the appropriate legal standards in

evaluating the evidence. Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v.

4

Shalala, 1 F.3d 357, 360 (5th Cir. 1993); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360. This Court may not reweigh the evidence, try the issues de novo or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

B.    The Record

I have reviewed the records in evidence and the ALJ's summary of the evidence. (Tr. 15-16). I find the ALJ's summary of the evidence substantially correct and

5

incorporate it herein by reference, with the modifications, corrections and highlights noted below.

The decedent met Crezell Mitchell in New Orleans in 1992 and married her on June 19, 1992. (Tr. 103, 110). On his marriage certificate, he gave his SSN as 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 and reported that he had been born in Eddy, New Mexico on May 14, 1944 to Oran Mahaffey and Zelda Kennedy. (Tr. 103). The State of New Mexico had issued a birth certificate for Curtis C. Mahaffey with that information on it. (Tr. 100). Plaintiff Dagny Mahaffey was born to decedent and Crezell Mitchell on September 17, 1992. (Tr. 104). Plaintiff Shirlaine Mitchell is Crezell Mitchell's daughter and was the decedent's stepdaughter. (Tr. 112). Plaintiffs' next friend, Elaine Bartholomew, who is prosecuting this appeal for them, is their maternal grandmother. (Tr. 20).

Decedent did not tell his wife anything about his past except to say that he had been in the Army, that he had no living family members and that a prior marriage had ended in his wife's death. (Tr. 24, 27, 130). He worked as an apartment manager at the Vieux Carré Guesthouse in New Orleans from 1991 until his death in November 1994, and his earnings from that job were posted to the account of SSN 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. (Tr. 29-31). Plaintiffs have no knowledge of any other jobs that he held before 1991 or where he lived before 1986, when he reportedly moved to New Orleans. (Tr. 130). The only evidence that plaintiffs presented to the SSA consisted of decedent's marriage certificate,

photograph, death certificate and Social Security card. (Tr. 106, 108, 130-31, 135). The Social Security card is missing from the administrative record. Ms. Bartholomew testified at the hearing but was unable to provide any additional identifying information or history of the decedent. (Tr. 23-26, 30).

When the Arizona resident applied for DIB and SSI in February 1996, he gave the SSA the same SSN and birth statistics as the decedent. (Tr. 36, 100). The Arizona resident had been hospitalized in Arizona State Hospital from May 1994 to June 1996, having pled guilty by reason of insanity to a charge of arson. (Tr. 76-99). Since June 1996, he had been living in a group home. (Tr. 15, 132-33).

Some of the Arizona resident's medical records are in the current administrative record. They reveal that he had been a homeless drifter at times and had a history of mental illness dating back to 1985, when he was admitted to Big Spring State Hospital in Texas for eight days. (Tr. 64-75). During his hospitalization in Arizona State Hospital in October 1994, he admitted to two prior incarcerations for forgery. (Tr. 78, 85, 96). In May of 1996, he admitted to having used several different names around 1969, but said that he had always used the same SSN. (Tr. 127). The medical records document his loss of his right eye, reportedly in a childhood accident with a knife, and his use of a prosthetic eye. (Tr. 64, 70, 79, 84).

The Arizona resident was interviewed by an SSA representative in 1996. When questioned about the earnings record maintained on SSN 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, he denied having worked for eight of the employers listed, including the Vieux Carré Guesthouse. (Tr. 126). The earnings record for the SSN is not in the administrative record.

The Arizona resident produced a New Mexico marriage certificate to Rachel Gomez dated 1973. (Tr. 101). He told the SSA that he was divorced in 1976 in Denver, Colorado. (Tr. 36). He produced a pictorial identification card from Utah dated March 19, 1993 and a California driver's license issued in 1992 valid through May 15, 1996. Both identification cards list his height as five feet nine inches. (Tr. 102, 135).

The Arizona resident told the SSA that he had a sister, Judy Griffin, last known address in Boston; a brother, Floyd H. Mahaffey, last known address in Houston; and another sister, Carolyn, last name unknown. He said he was estranged from his siblings and had not contacted any of them in about four years. (Tr. 127). The SSA telephoned a woman believed to be his sister, Judy Griffin, who was living in Washington. She told the interviewer that she had not seen her brother in 25 years. She described him as about five feet nine inches tall and she identified a scar on the right side of his face as a result of an automobile accident when he was five or six years old. She stated that he had lost one eye and that he wore a prosthetic eye. It is not clear from her statement whether the scar and the loss of his eye occurred in the same accident. (Tr. 135).

8

C.    Plaintiff's Appeal

    1.    *Whether the ALJ erred by relying on hearsay statements.*

    2.    *Whether the ALJ erred by applying an incorrect standard of proof.*

    3.    *Whether the ALJ failed to weigh the evidence and to provide a rationale for his decision.*

The Court considers all of plaintiffs' assignments of error together because they are intertwined. Essentially, plaintiffs argue that the ALJ's decision is not supported by substantial, admissible evidence.

The Commissioner's administrative proceedings are informal and non-adversarial. 20 C.F.R. § 404.900(b); Donato v. Secretary, Dep't of Health & Human Servs., 721 F.2d 414, 418 (2d Cir. 1983); Smith v. Schweiker, 677 F.2d 826, 830 (11th Cir. 1982); Ware v. Schweiker, 651 F.2d 408, 414 (5th Cir. Unit A 1981). A hearing before an ALJ is not subject to the Federal Rules of Evidence. Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995) (citing 20 C.F.R. § 404.950(c)); McClees v. Sullivan, 879 F.2d 451, 453 & n.2 (8th Cir. 1989) (citing 42 U.S.C. § 405(b); Richardson, 402 U.S. at 400). Thus, it is well settled that hearsay evidence is admissible and may constitute substantial evidence in an administrative proceeding. Id.; Bustos-Torres v. Immigration & Naturalization Serv., 898 F.2d 1053, 1055 (5th Cir. 1990); School Bd. v. Department of Health, Educ. & Welfare, 525 F.2d 900, 905, 906 (5th Cir. 1976).

9

The Eighth Circuit noted in <u>McClees</u> that hearsay evidence "which lacks reliability is not substantial evidence to <u>overcome sworn testimony of a [Social Security] claimant</u>." <u>McClees</u>, 879 F.2d at 453 (emphasis added); <u>accord</u> <u>School Bd.</u>, 525 F.2d at 905.  On the other hand, hearsay evidence alone may constitute substantial evidence, even in the face of direct, contradictory evidence, if it is corroborated by other evidence, if the claimant does not object to it or if no witness <u>testifies</u> to the contrary.  <u>Id.</u> at 905, 906; <u>see also</u> <u>Calderon-Ontiveros v. Immigration & Naturalization Serv.</u>, 809 F.2d 1050, 1053 (5th Cir. 1986) (no error in admitting hearsay report that is cumulative of plaintiff's testimony when he produced no evidence to refute anything in report).

The Fifth Circuit has stated that, "in determining whether hearsay can constitute substantial evidence[,] 'we must look to those factors which "assure underlying reliability and probative value."'"  <u>Young v. United States Dep't of Agriculture</u>, 53 F.3d 728, 730 (5th Cir. 1995) (quoting <u>School Bd.</u>, 525 F.2d at 905 (quoting <u>Richardson</u>, 402 U.S. at 402)).  Those factors identified in <u>Richardson</u>, a Social Security disability case, include: "(1) the out-of-court declarants had no bias or interest in the outcome; (2) the reports were available prior to the hearing, and the claimant could have subpoenaed the out-of-court declarants; (3) there was no inconsistency on the face of the reports; [and] (4) written medical reports by treating physicians have an inherent reliability and probative worth long

recognized by the courts."[1]  Id.  "The [Richardson] Court concluded that, even though there existed direct, contradictory evidence, the hearsay reports constituted substantial evidence."  Id.

Based on McClees and Young, plaintiffs in the instant case argue that most of the evidence in the Arizona resident's favor is unreliable hearsay evidence.  However, plaintiffs offered no sworn testimony or other non-hearsay evidence of their own to establish that their decedent was the true Curtis C. Mahaffey.  As the ALJ correctly stated in weighing their evidence against the Arizona resident's evidence, plaintiffs' only evidence consisted of the decedent's marriage certificate to their mother in 1992, his undisputed record of working at the Vieux Carré Guesthouse from 1991 to 1994, his photograph, his death certificate and his Social Security card.  The hearsay statements of the Arizona resident and his sister to SSA interviewers, which the ALJ credited, are no less reliable than plaintiffs' own hearsay statements, which the ALJ also credited. The Arizona resident's evidence meets the relevant elements of the Richardson test for reliability and probative value, particularly in light of plaintiffs' inability to present contradictory, live testimony.

Plaintiffs argue that the Arizona resident had a self-interest in obtaining and preserving his DIB and SSI and that his reputed sister may be "presumed" to have the same

---

[1]This fourth element is irrelevant in the context of the instant case.

interest in his behalf.  Plaintiffs and their grandmother have no less self-interest in obtaining and preserving their survivors' benefits.  Unlike the hearsay affidavits of the veterinary medical officers in <u>McClees</u>, which plaintiffs cite, there is no evidence that the SSA interviewers had any bias or interest in whether the Arizona resident or plaintiffs should succeed in their claims.  <u>See McClees</u>, 53 F.3d at 730-31 (veterinary medical officers, who were instructed by attorneys for United States Agriculture Department to prepare affidavits in manner that would support complaint by the Department for illegal "soring" of show horses, admitted omitting contradictory evidence from affidavits).

Plaintiffs contend that the Arizona resident may not be credible considering his history of incarceration for forgery and arson and of severe mental illness.  They also attempt to attribute his alleged lack of credibility to his sister, suggesting that her character and competency may be questionable as well.  No substantial evidence supports this contention.  As defendant states in its memorandum, character is not a prerequisite to receiving DIB, nor does the Arizona resident's "questionable character," as plaintiffs define it, negate the substantial and long-term evidence that he provided of his identity.

Although the ALJ made no explicit finding of credibility, it was unnecessary in this case.  Plaintiffs' grandmother, Bartholomew, was unable to offer any relevant testimony.  The ALJ weighed the few items of documentary proof submitted by plaintiffs against the more extensive evidence of identity submitted by the Arizona resident.  These records

12

consisted of medical records dating as far back as 1985 (Tr. 64-99), a patient identification card dated May of 1994 (Tr. 92), a marriage license from 1973 (Tr. 101), a California driver's license dated 1992 and an identification card from Utah dated 1993. (Tr. 102). The Arizona resident participated in a face-to-face interview with an SSA examiner in 1996, during which he provided details about his life and work history, which included denials of ever having worked in New Orleans or for eight of the employers listed on the earnings record attributable to the disputed SSN. (Tr. 122, 129). A woman who stated that she was his sister confirmed the location of a scar on his face and his loss of his right eye as a child. (Tr. 135). Although much of this evidence may be hearsay, the ALJ did not use it impermissibly to overcome sworn testimony of a claimant, because plaintiffs were unable to offer any such testimony. Rather, as he was required to do, the ALJ resolved conflicts in the evidence based on the weight of the evidence. Martinez, 64 F.3d at 174.

As to the remaining elements of the Richardson test, the inconsistencies between the statements of the Arizona resident and his sister were insignificant. The reports concerning his application for DIB and SSI were available to plaintiffs, but the ALJ in Louisiana could not have subpoenaed any of the declarants who lived in other states, even had plaintiffs asked for subpoenas, which they did not. The earnings record for the SSN,

13

which is absent from the record, would not have aided plaintiffs, as the Arizona resident specifically disclaimed the earnings from the decedent's only known employment.

Plaintiffs bear the burden to prove their entitlement to survivors' benefits. 42 U.S.C. § 402(d)(1); Graves v. Commissioner of Social Security, No. 99-4112, 2000 WL 1140711, at *1 (6th Cir. Aug. 7, 2000); Mornes ex rel. Norment v. Chater, 91 F.3d 1403, 1404 (10th Cir. 1996). As noted above, the ALJ's findings must only be supported by substantial evidence, which is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.

The ALJ did not impose a higher burden of proof on plaintiffs. They were given the opportunity to present their evidence, but they were unable to proffer any evidence to establish the decedent's identity before he began working at the Vieux Carré Guesthouse in 1991 and used the name and SSN of Curtis C. Mahaffey.

The Arizona resident's evidence of his use of this identity was more comprehensive and extended over a longer time period than the decedent's. The ALJ's conclusion that plaintiffs failed to carry their burden and that the totality of the evidence established that the Arizona resident was the real Curtis C. Mahaffey and owner of the account in question was based on substantial evidence in the record. See Brown v. Apfel, 192 F.3d 492, 498

14

(5th Cir. 1999) ("Normally, if [plaintiff] failed to carry her burden of proof, she would lose."); Vaughan, 58 F.3d at 132 (plaintiff failed to meet burden to prove disability when she offered no evidence that she was incapable of performing the types of work that the ALJ determined she could perform); Lam v. Apfel, No. 3:99-CV-220, 2000 WL 354393, *4 (N.D. Tex. Apr. 5, 2000) (plaintiff who failed to provide any evidence to bolster his credibility failed to carry his burden of proving he was disabled).

## CONCLUSION

Substantial evidence in the record supports the ALJ's decision that plaintiffs failed to carry their burden to prove that their decedent is Curtis C. Mahaffey and that, instead, the Arizona resident is the real Curtis C. Mahaffey and the actual owner of the disputed SSN.

The ALJ also found that the decedent had worked at the Vieux Carré Guesthouse from 1991 until his death in November 1994 and that plaintiffs are entitled to be credited with his wages from that employment for purposes of drawing survivors' benefits. Plaintiffs contend in a footnote in their memorandum that the Commissioner has refused to issue a new SSN for their decedent. It is unknown whether plaintiffs have complied with the Commissioner's regulations for applying for and receiving a new SSN. Although they cannot prove his real name (if it was not Curtis C. Mahaffey) and date and place of birth, those details would appear to be irrelevant when the sole purpose of issuing the new

15

SSN is to enable his survivors to draw the benefits to which they are clearly entitled.  The Court can perceive no reason why a new SSN could not be issued in the name of Curtis C. Mahaffey, deceased, and the wages from his employment in New Orleans (which the Arizona resident specifically denied were his) transferred to that account so that plaintiffs could receive the survivors' benefits to which they are clearly entitled.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that judgment be rendered in favor of defendant and that plaintiffs' complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 6th day of September, 2000.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

16